CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
January 06, 2026
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **LLOYD DOWNING,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No.: 7:24-cv-00240 |
| ) | |
| **v.** ) | |
| ) | |
| **VIRGINIA DEPARTMENT OF** ) | By: Hon. Robert S. Ballou |
| **CORRECTIONS, et al,** ) | United States District Judge |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### MEMORANDUM OPINION

Plaintiff Lloyd Downing, a Virginia inmate acting *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants, the Virginia Department of Corrections, Samuel Caughron, III, and W.R. Hensley violated his constitutional rights by unlawfully retaliating against him, denying him access to the courts, and violating his due process rights by suspending his visitation and telephone privileges. Dkt. 29. Downing verified that he attempted to exhaust his administrative remedies by filing a grievance, but it was rejected as untimely. Dkt. 26. Defendants moved to dismiss under Rule 12(b)(6) for failure to state a claim. Dkt. 30. This matter is now fully briefed. For the reasons set forth below, the Court will **GRANT** Defendants' motion to dismiss.

### STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

*Pro se* complaints are afforded a liberal construction and are to be held to a lower standard than pleadings drafted by lawyers. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction is particularly important when *pro se* complaints allege civil rights violations. *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021).

## FACTS

A complaint must provide the defendant fair notice of the claim and grounds entitling the plaintiff to relief. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). After Defendants moved to dismiss Downing's original complaint, he moved to file an amended complaint. Dkt. 25. The Court granted the motion to amend and denied Defendants' first motion to dismiss without prejudice. Dkt. 28. Downing filed an amended complaint. Dkt. 29. Defendants argue that only those facts alleged in the amended complaint should be considered on the motion to dismiss. Dkt. 31 at 3.

When ruling on a motion to dismiss, courts are directed to consider only the factual allegations contained in the complaint. Fed. R. Civ. P. 12(d); *Iqbal* 556 U.S. at 663. Additionally, an amended complaint supersedes a previous complaint, rendering the original complaint "of no effect." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021); *Young v. City of Mt. Ranier*, 238 F.3d 567, 573 (4th Cir. 2001). However, courts in the Fourth Circuit frequently consider facts alleged by *pro se* plaintiffs in deciding a motion to dismiss, even if they are improperly alleged outside of the complaint. *Holley v. Combs*, 134 F.4th 142, 144 (4th Cir. 2025); *see also*, *Goines v. Valley Community Services Board*, 822 F.3d 159, 166 (4th Cir. 2016) (holding that courts may consider documents explicitly incorporated by reference or otherwise integral to the complaint). "[C]ourts routinely look beyond what pro se litigants identify as their 'complaint' and analyze the substance of any included documents in considering a motion to dismiss for failure to state a claim." *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024). Therefore, I consider the original complaint (Dkt. 1), Downing's verified statement (Dkt. 26), and the amended complaint (Dkt. 29) as "the Complaint." So construed, Downing alleges the following facts giving rise to his claims.

Downing was incarcerated in the Wallens Ridge Correctional Facility during the relevant events.[1] Dkt. 25 at 1. Downing asserts that on March 27, 2023, Samuel Caughron and W.R. Hensley suspended his visitation and telephone privileges without cause and without notice, and that he discovered the suspension only when his friends and family were unable to schedule visits. Dkt. 1 at 3. Defendant Hensley banned visits from anyone except Downing's immediate family, beginning on March 16, 2023, for six months. Dkt. 26 at 2.[2] Downing contends that the suspension

---

[1] Downing is currently incarcerated at River North Correctional Center.
[2] Taking the Complaint in the light most favorable to the non-movant, the Court accepts that Downing's telephone privileges were also suspended. However, Downing's filings only show suspension of visitation rights.

3

was retaliatory and based on false and fabricated documents, specifically an erroneous incident report. Dkt. 29 at 2. According to the disciplinary action report, Downing committed "lewd or obscene acts directed toward or in the presence of another." Dkt. 26 at 2; VDOC Category I Code of Offenses 137a. The factual basis for the infraction is not included in the record. Downing maintains that prison policy permits suspension of visitation privileges only for multiple "100 series" convictions in one year. *Id*. at 4. At the time of the suspension, Downing had been infraction free for 23 months, aside from the erroneously reported infraction. *Id*.

Downing filed a grievance challenging the suspension on May 23, 2023. *Id*. at 3. Caughron responded on May 25, 2023, stating that the suspension was in error and that Downing's visitation rights would be restored. The intake decision rejected Downing's grievance because it was filed more than 30 days after the original incident. *Id*. at 5. It is not clear from the record whether the suspension remained in effect for the full six months, or if it was restored after Downing filed his grievance.[3]

The suspension caused Downing immense emotional anguish because several family members and friends who would have visited passed away in the interim. Dkt. 29 at 3. Downing also alleges that the suspension denied him meaningful access to the courts, particularly because Wallens Ridge does not have a law library or any law clerks, so access to the courts is already significantly limited. *Id*. He claims that while his visitation and telephone privileges were suspended, his habeas corpus claim was dismissed.[4] *Id*.

For relief, Downing seeks $75,000 in damages, expungement of the infraction from his record, and transfer to lower-level prison in the eastern district of Virginia. Dkt. 29 at 2; Dkt. 1 at

---

[3]Because the relative difference in the length of suspension is immaterial to my analysis, I presume the most consistent version, which is that the suspension lasted for six months.
[4]Downing does not provide a case number for his habeas corpus claim.

4

2. Downing is no longer incarcerated at Wallens Ridge, where the unconstitutional conduct allegedly occurred. Therefore, his request for injunctive relief was mooted by his transfer and is dismissed. *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009).

## DISCUSSION

Downing brought a § 1983 claim against Defendants, alleging that they violated his constitutional rights by denying him due process, meaningful access to the courts, and unlawfully retaliating against him by suspending his visitation and telephone privileges. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Downing alleges violations of his rights under the First and Fifth Amendments, and the Due Process Clause of the Fourteenth Amendment. Dkt. 1 at 3; Dkt. 29 at 3.

### I.  Proper Defendants

To be liable under 42 U.S.C. § 1983, defendants must act under color of state law. Downing alleges constitutional violations by the Virginia Department of Corrections, Samuel Caughron, and W.R. Hensley. States and state agencies are not amenable to suits for damages. Although individuals are amenable to suit, the claimant must plausibly allege personal involvement by the defendant to state a valid § 1983 claim.

### A.  State Sovereign Immunity

The Eleventh Amendment grants each state immunity from suit in federal court by citizens of another state. Const. Amend. XI. The Supreme Court has expanded the scope of immunity in holding that sovereign immunity bars suit in federal court by a citizen against their own state. *Hans*

5

*v. Louisiana*, 134 U.S. 1 (1890). States and state agencies are thus immune from suits for damages, unless immunity is waived by the state or abrogated by Congress. *Biggs v. North Carolina Dept. of Public Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (quoting *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019)).

Congress did not abrogate state sovereign immunity by enacting § 1983. Although officials are subject to suit for damages in their personal capacity, "[n]either a state nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Defendants argue that the Virginia Department of Corrections must be dismissed because, as a state agency, it is not subject to suit in an action for damages under § 1983. Dkt. 31 at 2–3. I agree. In *Johnson v. McCowan*, the court held that the Virginia Department of Corrections is "immune from suit as an arm of Virginia." 549 F. Supp. 3d 469, 475 (W.D. Va. 2021). Because the Virginia Department of Corrections is an arm of the state entitled to sovereign immunity, Downing's claims against the Virginia Department of Corrections are dismissed.

### B. Personal Involvement

"In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks omitted). A plaintiff must plausibly allege that the individual defendant's own actions violated the Constitution, or that the defendant set in motion action which he knew or should have known would cause another to inflict constitutional injury. *Anderson v. Clarke*, No. 7:23-CV-00618, 2024 WL 4173807, at *5 (W.D. Va. Sept. 12, 2024).

6

Defendants argue that, considering only the amended complaint, Downing fails to allege personal involvement by the individual defendants. Dkt. 31 at 3. Construing the complaint to include the original complaint, verified statement, and amended complaint, Downing identifies Caughron and Hensley as the individuals who "were responsible for taking claimant's visitation privileges without cause or reason." Dkt. 1 at 3. Downing identifies Caughron and Hensley in the original complaint, and by reference in the amended complaint by listing the defendants as "Virginia Department of Corrections, et al" and referring to "defendants" throughout. Dkt. 29. Caughron and Hensley received notice of the claims against them, as contemplated under *Erickson*, because they responded to the amended complaint. *See* Dkt. 30, 31. Thus, Downing plausibly alleges personal involvement by Caughron and Hensley.

## II.     Merits

Although Caughron and Hensley are proper defendants, Downing's claims fail on the merits. First, he does not have a protected liberty or property interest in his visitation and telephone privileges, so his due process claim must fail. Second, even assuming that Downing was denied access to the courts because Wallens Ridge does not have a law library or clerk, Downing fails to provide facts to show how this denial of access frustrated an otherwise valid claim. Third, Downing does not allege sufficient facts to establish that he engaged in a constitutionally protected activity, that any retaliatory action had more than a de minimis impact on any valid protected activity, or that a causal link existed between the protected activity and adverse action. Therefore, Defendants' motion to dismiss is granted.

### A. Due Process Claim

Downing alleges that unjustified suspension of his visitation rights and telephone privileges violated his due process rights. To show that he was denied due process, Downing must

7

"(1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).

Liberty interests may be established by either the Due Process Clause itself or state law or policy. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court has held that "the denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 461 (1989). Similarly, telephone privileges are not protected by the Due Process Clause. *Diggs v. Johnson*, No. 7:24-CV-00361, 2024 WL 4681622, at *3 (W.D. Va. Nov. 5, 2024). Therefore, there is no liberty interest in telephone or visitation privileges derived directly from the Constitution. However, a liberty interest can be created by state law or policy where (1) a state law or policy provides the plaintiff with an expectation or interest in avoiding the condition of confinement and (2) the condition "imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Prieto*, 780 F.3d at 249; *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Downing's claim fails because Virginia state law and policy does not provide him a protected liberty interest in visitation or telephone access. To show a protected liberty interest, Downing must first show that the policy "creates an 'objective expectation' in the liberty interest 'in such a way that an inmate could reasonable expect to enforce it against prison officials.'" *Desper v. Clarke*, 1 F.4th 236, 247 (4th Cir. 2021) (quoting *Thompson*, 490 U.S. at 465). An expectation is created if the policy confers mandatory outcomes, removing official discretion. *Id*.

Downing does not identify any Virginia law that grants a liberty interest in this case. Instead, he relies on prison operating procedures in his Complaint to assert that he has a liberty interest in telephone and visitation privileges. Operating Procedure 851.1, which governs

8

visitation, states "[i]nmate and CCAP probationer/parolee visitation are a privilege. The Facility Unit Head may restrict an individual's visiting privileges, when necessary, to ensure the security and good order of the facility." VDOC Op. Proc. 851.1(I)(A). Similarly, telephone access is considered a privilege. *See* VDOC Op. Proc. 803.3(I). The discretionary nature of these provisions does not create an "objective expectation" in a liberty interest. Courts have routinely concluded that temporary loss of visitation privileges, as directed at the discretion of prison officials, does not implicate a liberty interest. *Thompson*, 490 U.S. at 464 ("The overall effect of the regulations is not such that an inmate can reasonably form an objective expectation that a visit would necessarily be allowed absent the occurrence of one of the listed conditions"). Similarly, courts have concluded there is no federal or statutory right to telephone usage in prison. *United States v. Alkire*, 82 F.3d 411, at *1 (4th Cir. 1996) (table).

Even if Downing can show that the operating procedure created an objective expectation of a liberty interest, he must also show that the denial of such expectation caused a condition of atypical and significant hardship. In determining atypicality, the Supreme Court looks to the character of the condition using three factors: (1) magnitude (2) length of time and (3) collateral consequences on the inmate's sentence. *Incumaa v. Stirling*, 791 F.3d 517, 530 (4th Cir. 2015) (citing *Wilkinson*, 545 U.S. at 214). Here, all three factors weigh against a finding of significant hardship. Downing lost visitation and telephone privileges for, at most, 6 months. Dkt. 1 at 2. First, restricted access to privileges is generally insufficient to show a significant deprivation. *Riddick v. Miller*, No. 7:23-CV-492, 2025 WL 974106, at *4 (W.D. Va. Mar. 28, 2025). Second, the length of time was not indefinite. Finally, there is no showing that the telephone and visitation restriction had any impact on Downing's sentence. *Cf. Incumaa*, 791 F.3d at 530 (holding that assignment to a Supermax placed an atypical burden on plaintiffs so as to create a liberty interest

when (1) the confinement restrictions were extreme and synonymous with complete isolation (2) the restrictions were indefinite and (3) placement deprived plaintiffs of parole consideration). Because Downing cannot show that he had an objective expectation in a protected liberty interest, nor that denial of such interest created a condition of significant and atypical hardship, his Fourteenth Amendment Due Process claim is dismissed.

### B. Access to the Courts Claim

Downing alleges that he was denied access to the courts because of (1) the six-month suspension of his visitation and telephone privileges and (2) the lack of access to a law library or clerk trained in the law. Dkt. 29 at 3. He claims these factors prejudiced his ability to litigate his habeas corpus claim, which was ultimately dismissed. *Id*.

The Supreme Court has recognized a prisoner's right to access the courts in both the First Amendment and the Due Process Clause of the Fourteenth Amendment. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."); *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) ("The right of access to the courts ... is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights."). Prisons must give inmates access to law libraries or direct legal assistance to ensure "adequate effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977).

A prisoner claiming lack of access to the courts must show: (1) that he was denied an adequate opportunity to present claimed violations of fundamental rights; and (2) that he was actually injured as a result of these shortcomings. *See Lewis v. Casey*, 518 U.S. 343, 351–53, 355 (1996). A prisoner may be denied adequate opportunity to present violations if shortcomings in

the prison's library or assistance program hindered his effort to challenge his conviction or sentence, directly or collaterally, or to challenge the conditions of his confinement. *Id*. at 351–52. As to the injury requirement, "[s]pecificity is necessary so that prison officials are not required to file unnecessary responses to speculative allegations." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (internal citations omitted). "[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Broggin v. BRRJA*, No. 7:21-CV-00180, 2022 WL 875040, at *12 (W.D. Va. Mar. 23, 2022) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). The right protected is access to the courts, not any particular means by which access is effectuated. *Counts v. Newhart*, 951 F. Supp. 579, 588–89 (E.D. Va. 1996) *aff'd*, 116 F.3d 1473 (4th Cir. 1997).

First, Downing's claim that the six-month visitation and telephone suspension violated his right of access to the courts must fail. The right of access guarantees prisoners the capability to bring suit. *Lewis*, 518 U.S. at 356. Telephone and visitation privileges are not tools by which a prisoner effectuates his right of access. Those tools generally consist of adequate law libraries or direct legal assistance. *Id*. Thus, Downing fails to show that suspension of his visitation and telephone privileges denied him access to the courts.

Downing also claims that Wallens Ridge does not have a law library or clerk, which deprived him of access to the courts. As a threshold matter, Downing fails to allege that the named defendants were personally involved in this policy. Because Caughron and Hensley did not act personally to deprive Downing of access to a library or clerk, this claim against them must be dismissed. *See Alexander v. Ely*, No. 7:20CV00766, 2022 WL 15524969, at *3 (W.D. Va. Oct. 27, 2022), *aff'd*, No. 23-6027, 2023 WL 3675913 (4th Cir. May 26, 2023)

11

Even presuming personal involvement, Downing's second access claim must fail. Although there is no abstract right to law libraries or clerks, prison authorities must provide inmates seeking to challenge post-conviction proceedings and civil rights actions with at least one of those tools. *See Younger v. Gilmore*, 404 U.S. 15 (1971); *Bounds v. Smith*, 430 817 (1977). Therefore, Downing plausibly alleges the first element of a lack of access claim. However, Downing's claim founders on the second element. Downing provides no facts that the denial of access to a law library or law clerk impeded his habeas claim, obstructed his ability to file a habeas petition, or prohibited him from pursuing habeas relief. The right of access does not require the State to aid prisoners in effective litigation. *Lewis*, 518 U.S. at 355. Because Downing does not allege a nonfrivolous claim he sought to litigate, his claim must be dismissed. *Christopher*, 536 U.S. at 415.

### C. Retaliation Claim

Downing alleges that Hensley and Caughron suspended his visitation rights "vindictively and wrongly" by creating false and fraudulent paperwork, which denied him access to the courts in violation of the First and Fourteenth Amendments. Dkts. 1, 26. A retaliation claim has three elements: (1) the plaintiff engaged in an activity protected under the First Amendment; (2) the "defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights"; and (3) plaintiff's protected activity and defendants' conduct are causally related. *Jones v. Solomon*, 90 F.4th 198, 213–14 (4th Cir. 2024). Retaliation is actionable even if the act taken is ordinarily permissible. *Am. Civ. Liberties Union of Maryland, Inc. v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993).

First, Downing does not plausibly allege that he has engaged in a constitutionally protected First Amendment activity. Courts have long held that "[t]he First Amendment protects the right

'to petition the Government for a redress of grievances.'" *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (internal citations omitted); *see also Booker*, 855 F.3d at 544 ("this Court has long held that prison officials may not retaliate against prisoners for exercising their right to access the courts"). Although access to the courts is a protected activity, Downing does not allege that he attempted to access the courts. He claims that suspension of his visitation rights "made it impossible for me to prepare my defense and properly respond to my Federal Habeas Corpus and it was ultimately dismissed." Dkt. 29 at 3. The ability to litigate a habeas corpus claim is a protected activity. However, a review of Downing's filings in the Eastern and Western Districts of Virginia show that he has filed only two habeas corpus actions, the last of which was dismissed in 2021. Judgment, *Downing v. Ray*, 2:10-cv-00413 (E.D. Va. Apr. 15, 2011), Dkt. 20; Final Order, *Downing v. Commonwealth of Virginia*, 2:20-cv-00146 (E.D. Va. Mar. 1, 2021), Dkt. 21. The alleged interference began in March 2023. Even affording Downing's complaint the generous construction appropriate for *pro se* plaintiffs, he fails to allege facts that show engagement in a protected activity because he did not have an outstanding habeas corpus claim at the time of the suspension.

Even assuming Downing can show that he engaged in a protected activity, he does not allege facts that show he was dissuaded from exercising his constitutional rights. The second element is objective: a plaintiff must demonstrate that a defendant's actions were more than a mere inconvenience and rose to a level severe enough to dissuade a person of ordinary firmness from exercising their First Amendment rights. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). "[A] showing of adversity is essential to any retaliation claim" because "[w]here there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation." *Am. Civ. Liberties Union*, 999 F.2d at

13

785. However, a plaintiff need not show actual deprivation of his First Amendment rights to establish retaliation, as "conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights." *Booker*, 583 Fed. App'x. 43, 44 (4th Cir. 2014) (quoting *Constantine*, 411 F.3d at 499). Filing a false disciplinary infraction has been found to constitute adverse action. *Id.*; *Warren v. Clasp*, No. 1:22CV489, 2023 WL 1864871, at *5 (E.D. Va. Feb. 9, 2023), *appeal dismissed*, No. 23-6180, 2023 WL 5522214 (4th Cir. Apr. 27, 2023). Downing must also show that the adverse action caused "something more than *de minimis* inconvenience to his exercise of First Amendment rights." *Booker*, 583 Fed. App'x. at 44 (quoting *Constantine*, 411 F.3d at 500).

Here, the record reflects that the disciplinary infraction was filed in error. Dkt. 26 at 3. Therefore, Downing has alleged adverse action. However, Downing fails to allege that the fraudulent report caused more than *de minimis* infringement of his First Amendment right of access. The Complaint states "[t]hese conditions [no law library nor clerks] already severely limited my access to the courts which combined with the fabricated 6-month suspension of all my visitation and telephone privileges . . . made it impossible for me to prepare my defense and properly respond to my Federal Habeas Corpus and it was ultimately dismissed." Dkt. 29 at 3. Downing does not allege that the visitation restriction denied him meetings with his lawyer or the ability to research his case. Downing does not provide a case number for his habeas corpus claim, and his most recent habeas corpus petition in federal court was dismissed in 2021. Although the Court takes all allegations in the Complaint as true, bare conclusions are insufficient to state a claim. Because Downing cannot show more than *de minimis* infringement of his right of access, his retaliation claim must be dismissed.

To satisfy the third element, a plaintiff must present evidence that their First Amendment activity was a "but for cause of the adverse action alleged." *Ridpath v. Bd. of Governors Marshall*

14

*Univ.*, 447 F.3d 292, 318 (4th Cir. 2006). On a motion to dismiss, a plaintiff adequately pleads causation if he can show (1) temporal proximity between the protected activity and retaliatory, adverse act and (2) the defendant had knowledge of the protected activity. *Gowen v. Winfield*, 130 F.4th 162, 174 (4th Cir. 2025).

Downing's claim also fails as to the third element of causation because he fails to draw any causal link between the protected conduct and adverse action. Even assuming temporal proximity, Downing does not allege any facts to show that Defendants had knowledge of the protected activity. Therefore, Downing's retaliation claim must be dismissed.

## CONCLUSION

Defendants' motion to dismiss, Dkt. 30, is **GRANTED**. An appropriate order accompanies this opinion.

Entered:  January 6, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge